# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| CALVIN and GLORY STANTON,<br><br>                           Plaintiffs,<br>vs.<br><br>OCWEN LOAN SERVICING, LLC, DEUTSCHE BANK NATIONAL TRUST COMPANY f/k/a BANKERS TRUST COMPANY, NEW CENTURY MORTGAGE CORPORATION, and DOES 1 through 20,<br><br>                           Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 1:10CV2 DAK |

This matter is before the court on Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Deutsche Bank National Trust Company's ("Deutsche Bank") (collectively, "Defendants") Motion to Dismiss. A hearing on the motion was held on June 22, 2010. At the hearing, Plaintiffs Calvin and Glory Stanton were represented by Nathan W. Drage, and Defendants were represented by Shawn K. Workman. The court has carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to this motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

Plaintiffs have alleged eight causes of action against Ocwen, their former mortgage loan servicer, and Deutsche Bank, the foreclosing beneficiary of the mortgage loan. Plaintiffs had

previously defaulted on their mortgage in 2006. They fell several months behind, but they cured this default and the Notice of Default was cancelled. Then, in 2009, they fell behind again. They had not paid for April, May, or June, and on or about June 10, 2009, Plaintiffs made payment to Ocwen for April. They were contacted a few days later by Ocwen and were informed that the payment would be returned because Ocwen was going to require full payment. Ocwen allegedly told Plaintiffs that, despite the payment, they would need to go through a loan modification because the April, May, and June payments were late, but the Ocwen representative also allegedly stated that, based upon income and equity in the home, they would be able to obtain a "loan modification."

Plaintiffs began the process of securing a loan modification through two programs: (1) the federal government's Home Affordable Modification Program ("HAMP"), and (2) an in-house Ocwen loan modification. Soon thereafter, and while they were working with Ocwen to complete the loan modification, Plaintiffs received a "Notice of Default and Election to Sell," dated July 15, 2009. When Plaintiffs contacted Ocwen about the Notice, they were assured that the Notice was standard procedure and that they should not worry about it. According to Plaintiffs, they were assured that the loan modification process would proceed without interruption or foreclosure. They also claim that they were told that the process would take months to complete and that as long as they were in communication with Ocwen, they did not need to fear losing their property.

Plaintiffs continued to work with various Ocwen representatives to complete the loan modification process. Plaintiffs allegedly called Ocwen so regularly that Ocwen told them not to call. By subsequent written correspondence, Ocwen confirmed the "two tracks" of loans, represented that it was "not necessary to call," that Plaintiffs need not worry about foreclosure as long as Ocwen had received all the required documents, and that Ocwen would not initiate a foreclosure action

and would not move ahead with a foreclosure sale, and that the representatives were working diligently to process the application.

By October 2009, Ocwen representatives stated to Plaintiffs that the loan modification process was approved. Ocwen sent a written confirmation letter with the modification agreement (the "Modification Agreement") for signature. The letter was dated October 16, but it was not received until October 24, 2009. The deadline for returning the signed documents, though, was October 23, 2009 – the day before the letter was received.

Plaintiffs also received a "Notice of Trustee's Sale," dated October 21, 2009 (and postmarked October 23) – the same deadline for returning the forms. The sale date was November 24, 2009 at 8:30 a.m. This Notice of Sale was dated prior to when the loan modification documents were sent.

When Mrs. Stanton contacted Ocwen to find out why she had received the Notice of Sale, she was told that the Notice had been sent out in error and that the sale would be canceled because Plaintiffs had received the Modification Agreement later than expected. Mrs. Stanton was reassured that there was no reason to worry if the signed documents and the initial payment were received by December 1, 2009. The next day, November 4, 2009, Mrs. Stanton sent a letter to Ocwen memorializing their understanding that the Modification Agreement and payment could still be received. She also sent the initial payment. Her husband was out of town, but as soon as he returned, they both signed the Modification Agreement. On November 11, 2009, Plaintiffs faxed the signed Modification Agreement. Three hours later, someone from Ocwen called to say that Ocwen had received the Modification Agreement and that everything was fine. The Ocwen representative also stated that the Notice of Sale had already been canceled because

3

of the Modification Agreement and that there was nothing to worry about.

At some point thereafter, Plaintiffs again called to make sure that everything was okay. They were told, however, that the Loan Modification had been "void" or "voided." Plaintiffs were shocked and asked when this had happened because they had never been notified, and they had signed the documents and paid the required amount. The Ocwen representative stated that the documentation was received late, which was entirely contradictory to what the Ocwen representative had said when an Ocwen representative called after receiving the November 11, 2009 fax.

Even though the Loan Modification had been voided, the Ocwen representative allegedly told Plaintiffs that it would not be a problem; they could simply resubmit a proposal. Pursuant to this suggestion, Plaintiffs made a new submission on November 23, 2009.

Because they were fearful about what might happen, however, Plaintiffs began calling two to three times a week to make sure that there would not be any mistakes. Although they could never talk to the same person, they were repeatedly assured that "it takes time" and that there was no need to worry about their home being sold.

But on or about December 14, 2009, an Ocwen representative told Plaintiffs that the home was scheduled for sale again. Although Plaintiffs were horrified, the representative told them that the loan modification was still in process and that the sale date would be canceled. Plaintiffs, however, sought the assistance of a community housing assistance agency (the "Agency). The Agency representative contacted Ocwen on December 23, 2009, and was told that the sale would be postponed.

To be sure, Plaintiffs again called Ocwen on Saturday, December 26, 2090. They were

told that the Loan Modification was still being processed and that the Foreclosure Sale would be canceled and to call back on Monday. On Monday, December 28, 2009, Plaintiffs and the Agency representative again contacted Ocwen. They were told to call back at 2:00 PM. When Plaintiffs and the Agency representative called back, they were told that Ocwen was talking to the attorney right then to postpone the sale, which was scheduled for the following morning. After being put on hold for quiet a while, the Ocwen representative stated that there would be no loan modification. When asked why, the Ocwen representative stated, "Because we come out better if we foreclose."

At that point, the sale was going to take place the next day, and Plaintiffs had no time to retain counsel prior to the alleged sale. The foreclosure sale took place on December 29, 2009. On January 6, 2009, Plaintiffs received a five-day notice to terminate tenancy. Plaintiffs have now asserted eight causes of action against Ocwen and Deutsche. These causes of action are: (1) Breach of Duty of Good Faith and Fair Dealing; (2) Breach of Contract; (3) Negligent Misrepresentation; (4) Fraud; (5) Negligent Infliction of Emotional Distress; (6) Intentional Infliction of Emotional Distress; (7) Violations of Fair Debt Collections Practices Act; and (8) Violations of Truth in Lending Act. Defendants have moved to dismiss all eight claims.

## II.  STANDARD OF REVIEW

The court must determine whether the complaint includes enough facts that, if assumed to be true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, ___ U.S.___, ___, 129 S.Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).

In evaluating a motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the nonmoving party, here the Plaintiffs. *See Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008); *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008).

### III.  DISCUSSION

A.  BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

Defendants argue that Plaintiffs' claim for Breach of Duty of Good Faith and Fair Dealing fails because Defendants had no contractual or legal duty to offer a loan modification and that the implied covenant of good faith and fair dealing does not create new, independent rights or duties not agreed upon by the parties.

The court, however, finds that Plaintiffs have stated a claim for breach of this duty. "Under the covenant of good faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199-200 (Utah 1991) (citations omitted).   The court in *St. Benedict's* also stated that

> To comply with his obligation to perform a contract in good faith, a party's actions must be consistent with the agreed common purpose and the justified expectations of the other party. Restatement (Second) of Contracts § 205 comment a (1981). The purpose, intentions, and expectations of the parties should be determined by considering the contract language and the course of dealings between and conduct of the parties.

*Id*. at 200.

While Defendants are correct that they had no contractual or legal duty to offer a loan modification, the court finds that, pursuant to the totality of the allegations asserted in this case, which the court must assume to be true, Ocwen entered into an oral contract with Plaintiffs to refrain from foreclosing on the Plaintiffs' house as long as Plaintiffs were attempting a loan modification. Therefore, Defendants had an implied duty of good faith and fair dealing toward Plaintiffs in this regard.

This determination is based on Plaintiffs' allegations that they were repeatedly assured that the Loan Modification process was moving along and that Plaintiffs did not need to worry about foreclosure; that as long as Plaintiffs were in contact with Ocwen, they need not fear losing their property; that it was not necessary to call Ocwen as long as the documents had been received; that Ocwen would not initiate a foreclosure action and would not move ahead with a foreclosure sale; that the loan modification process was approved but then Plaintiffs received a "Notice of Trustee's Sale; that the Modification Agreement had been received and that "everything was fine," that the Notice of Sale had already been canceled, and that "there was nothing to worry about"; that the Modification Agreement had been "voided" but that everything would be fine if Plaintiffs re-submitted their documents; that there would be no sale, etc.

Plaintiffs were strung along from June 2009 through December 2009, repeatedly being reassured that "everything was fine" and that there would be no foreclosure on their property, only to find out that Ocwen's representations were, at a minimum, not accurate. Because of Ocwen's allegedly misleading or inaccurate representations, Plaintiffs were lulled into a sense of security and were not afforded any time to retain counsel prior to the last-minute foreclosure sale. Thus, the court finds that the alleged facts indicate that Defendants did not proceed in a manner

7

consistent with the justified expectations of Plaintiffs or the intentions of the parties. Defendants owed Plaintiffs a duty of good faith and fair dealing, and if Plaintiffs are able to prove their allegations, a reasonable jury could certainly find that Defendants breached that duty.

**B. BREACH OF CONTRACT**

Defendants seek dismissal of this claim, arguing that the Statute of Frauds bars a claim based on an alleged oral representation concerning real property. The court, however, disagrees. While the original mortgage was required to be in writing, where Ocwen allegedly agreed to forestall foreclosure on the property if Plaintiffs performed certain actions, informed Plaintiffs that there would be no foreclosure, but ultimately decided to foreclose at the eleventh hour, the Statue of Frauds does not bar Plaintiffs' claim for breach of contract. *See Fisher v. Fisher*, 907 P.2d 1172 (Utah Ct. App. 1995).

**C. NEGLIGENT MISREPRESENTATION**

Defendants claim that no duty exists between the parties and that Plaintiffs have not set forth facts to allege that Defendants misrepresented a material fact. Defendants, however, are wrong.

Whether a duty exists is a question of law to be determined by the court. Defendants argue that "[s]tates within the Tenth Circuit routinely find that no fiduciary duty exists between a lender and a borrower," but Defendants neglected to mention that only "some" states within the Tenth Circuit follow this rule. The Honorable Ted Stewart recently found that "[o]ther states in the Tenth Circuit have held the lender borrower relationship, without more, is fundamentally a creditor/debtor situation where no fiduciary duty exists, but a fiduciary duty may be created between a lender and a borrower depending on the specific facts surrounding the transaction."

2:09cv372 (citing *Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 661 (Wyo. 2003) (quoting *Martinex v. Assocs. Fin. Serv. Co. of Colorado, Inc.*, 891 P.2d 785, 789 (Wyo. 1995)); *Boykin v. CFS Enter., Inc.*, 2008 WL 4534400, *3 (D. Kan. Oct. 6, 2008).

Moreover, Judge Stewart went on to state that "Utah seems to follow this line of cases. 'In Utah, a fiduciary or confidential relationship will be found 'when one party, having gained the trust and confidence of another exercises extraordinary influence over the other party.'" *Id.* (citing *State Bank of Southern Utah v. Troy Hygro Sys., Inc.*, 894 P.2d 1270, 1275 (Utah Ct. App. 1995)).

Similarly in this case, the court finds that the lender has "[gone] beyond simply providing money to the borrower." Accordingly, the court declines to dismiss Plaintiffs' claim for negligent misrepresentation.

### D. Fraud

Defendants contend that Plaintiffs have failed to plead their fraud claim with the required specificity. The court disagrees, and finds that, at this point in the litigation, prior to discovery, Plaintiffs have sufficiently pleaded a plausible claim for fraud under the standards set forth in *Ashcroft v. Iqbal*, 129 S.Ct. at 1949. The court, therefore, declines to dismiss the fraud claim at this juncture

### E. Negligent Infliction of Emotional Distress

Ignoring the many conversations and representations allegedly made by Ocwen representatives to Plaintiffs, Defendants claim that "Plaintiffs cannot maintain that Defendants, in exercising their legal rights under the Deed of Trust and Promissory Note, should have

9

realized that this conduct involved an unreasonable risk of causing distress to Plaintiffs." Mem. in Supp. at 12. Defendants' attempt to portray this dispute as an easy case of default and a resulting foreclosure fails.

At this point, Plaintiffs have alleged that (1) Defendants knew, or should have known, that Plaintiffs would and did, in fact, reasonably believe and rely on statements by Defendants, to Plaintiffs' great emotional harm; (2) Defendants knew, or should have known, that the conduct of Defendants . . . would cause emotional distress to Plaintiffs; and (3) as a "direct, natural, and proximate result of the emotional distress caused by Defendants, Plaintiffs have experienced horrible emotional distress, pain and suffering that has consumed them hourly in all of their activities. Complaint ¶¶ 136-138.

While Plaintiffs must provide evidence of more than "horrible emotional distress," the court finds that it would be premature to dismiss this claim prior to discovery. Defendants may file a motion for summary judgment after discovery if Plaintiffs' evidence of their distress does not meet the levels suggested by the Utah Supreme Court in *Harnicher v. University of Utah Med.* Ctr., 926 P.2d 67, 69 (Utah 1998) and *Hansen v. Mountain Fuel Supp. Co.*, 858 P.2d 970, 975 (Utah 1993).

F. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Again, Defendants claim that Plaintiffs' claim for intentional infliction of emotional distress fails as a matter of law. They claim, among other things, that "foreclosure of a deed of trust is not outrageous or extreme, but is a normal event when a mortgage debt is not paid." Mem. in Supp. at 14.

As with the claim for negligent infliction of emotional distress, this court finds that it

would be premature to dismiss this claim prior to discovery. If this were a simple case of foreclosing after a mortgage debt is not paid, then the claim would be dismissed, but, if Plaintiffs allegations are believed, Defendant's perception of this case bears little resemblance to the actual case.

G. **FAIR DEBT COLLECTIONS PRACTICES ACT**

Defendants argue that they are not debt collectors as defined by the Fair Debt Collections Practices Act ("FDCPA") and that Plaintiffs have failed to allege facts demonstrating Defendants' liability. The court agrees with Defendants that Plaintiffs have not set forth a plausible claim under the FDCPA. If Plaintiffs determine during discovery that the FDCPA applies to Deutsche Bank, they may file a motion for leave to amend their Complaint.

H. **TRUTH IN LENDING ACT**

According to Defendants, Plaintiffs' claim under the Truth in Lending Act ("TILA") must be dismissed as time-barred and because Plaintiffs have not alleged any facts that could plausibly constitute a violation of TILA.

Having read Plaintiffs' Complaint and their arguments in opposition to Defendants' motion on this claim, it is unclear to the court what Plaintiffs' alleged TILA violations are. The court finds that Plaintiffs have not alleged a plausible TILA violation. If, during discovery, Plaintiffs learn more about what happened during the alleged loan-modification process, and if they determine that a specific violation of TILA occurred, as supported by case law, then Plaintiffs may file a Motion for Leave to Amend Complaint.

## IV.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [Docket No. 4] is GRANTED in part and DENIED in part.  Plaintiffs' claims for violations of the Fair Debt Collections Practices Act and the Truth in Lending Act are DISMISSED without prejudice to renew if additional evidence comes to light during discovery.  All other claims remain.

DATED this 28th day of September, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge